Williams, Judge,
delivered the opinion of the court:
Plaintiff is a private in the United States Army where he has served as an enlisted man for a period of more than 20 years. On July 21, 1938, he was honorably discharged from a three-year term of enlistment, and on July 22, 1938, reenlisted for a period of three years in the grade of private.
Section 9 of the basic pay act of June 10, 1922, 42 Stat. 625, 629; U. S. C. Title 10, Sec. 633, provides:
On and after July 1, 1922, an enlistment allowance equal to $50, multiplied by the number of years served in the enlistment period from which he has last been discharged, shall be paid to every honorably discharged enlisted man of the first three grades who reenlists within a period of three months from the date of his discharge, and an enlistment allowance of $25, multi *522 plied by the number of years served in the enlistment period from which he has last been discharged, shall be paid to every honorably, discharged enlisted man of the other grades who reenlists within a period of three months from the date of his discharge.
By virtue of this provision of law plaintiff upon his reenlistment on July 22, 1938, became entitled to receive as a reenlistment allowance the sum of $75. He has not been paid this reenlistment allowance and is entitled to recover that amount in this suit if this statute was in effect at the time of his reenlistment.
The act of August 4, 1854, section 2, 10 Stat. 575, provided a reenlistment allowance for enlisted men of the Army who reenlisted within one month after an honorable discharge from a previous enlistment. Subsequent acts of Congress, prior to the act of June 10, 1922, continued the payment of this reenlistment allowance in various forms. Following the passage of the act of June 10, 1922, all men reenlisting in the Army within three months from the date of their honorable discharge from preceding enlistments were paid reenlistment allowances provided in that act until after July 1, 1933, upon which date such payments were suspended under the provisions of section 18 of the act of March 3, 1933, Treasury-Post Office Department Appropriation Act, 47 Stat. 1489, 1519, which reads:
Sec. 18. So much of sections 9 and 10 of the Act entitled “An Act to readjust the pay and allowances of the commissioned and enlisted personnel of the Army, Navy, Marine Corps, Coast Guard, Coast and Geodetic Survey, and Public Health Service,” approved June 10, 1922 (U. S. C. Title 37, secs. 13 and 16), as provides for the payment of enlistment allowance to enlisted men for reenlistment within a period of three months from date of discharge is hereby suspended as to reenlistments made during the fiscal year ending June 30, 1934.
Section 24 of the Act of March 28, 1934, 48 Stat. 509, 523, continued in the same language the suspension for the fiscal year 1935.
The suspension was further continued in the same language for the fiscal year 1936 by the Act of May 14, 1935, *523 the Treasury-Post Office Department Appropriation Act, 49 Stat. 218, 226.
The suspension was last invoked for the fiscal year '1937 by the Treasury-Post Office Department Appropriation Act of June 23, 1936, 49 Stat. 1827, 1837, which employed the same language.
Manifestly these acts of Congress suspending the operations of section 9 of the basic pay act of June 10, 1922, for the fiscal years 1933-37, did not operate as a repeal of that Act and was not intended by Congress to do so. The basic act remained unchanged and without modification as it had always stood.
For the fiscal yéars 1938 and 1939, Congress did not continue the suspension of the provisions of the 1922 act in respect to the payment of the reenlistment allowance involved but made unavailable for the payment of such allowance all appropriations enacted for these years. For the fiscal year 1939 it was provided in section 402 of Public Resolution No. 122, approved June 21, 1938, 52 Stat. 809j 818, that:
* * * no part of any appropriation contained in this or any other Act for the fiscal year ending June 30, 1939, shall be available for the payment of enlistment allowance to enlisted men for reenlistment within a period of three months from date of discharge as to reenlistments made during the fiscal year ending June 30, 1939, notwithstanding the applicable provisions of sections 9 and 10 of the Act entitled “An Act to readjust the pay and allowances of the commissioned and enlisted personnel of the Army, Navy, Marine Corps, Coast Guard, Coast and Geodetic Survey, and Public Health Service,” approved June 10, 1922 (37 U. S. C. 13, 16).
Similar provision was made in the act of May 28, 1937, 50 Stat. 213, 232, in respect to the fiscal year 1938.
The defendant contends that it was the intention of Congress to suspend the operation of the permanent law- for the payment of the enlistment allowances for the fiscal years ending- June 30, 1938, and June 30, 1939, and says in the brief that “the later two Acts were so clear as to be express legislation against the payment- of reenlistment allowances.”
*524 We cannot- agree with the defendant in this contention. - The language found in these provisos contains no reference to the suspension of the basic statute. Congress in dealing with this question for the fiscal years preceding 1938 had specifically and in plain terms stated' that the provision in the basic pay act for an allowance for reenlistment during those years was suspended. It must be assumed that had Congress intended to continue such suspension for the fiscal' years 1938 and 1939 it would have employed the same language, or language equally plain and unequivocal. The deliberate selection of language so different from that used in the preceding Acts indicates that a change of law was intended and gives rise to a definite presumption that it was the intention of Congress to change from and not to continue the suspension which had previously existed for the preceding years. United States v. Fisher, 2 Cranch 358, 1 Dallas 421; Pirie v. Chicago Title and Trust Co., 182 U. S. 438; Crawford v. Burke, 195 U. S. 176; Brewster v. Gage, 280 U. S. 327.
Following the enactment of the statute of June 10, 1922, Congress in the various appropriation acts for subsequent years made no appropriation in a designated amount for the payment of the reenlistment allowance. However, the funds appropriated for the “Pay, and so forth, of the Army” in respective appropriation acts were regarded as available for such payment and prior to June 30, 1933, payment had regularly been made out of such appropriations without question. The act of June 10, 1922, is. a part of the permanent pay legislation of the Army. This Act, being neither suspended for the fiscal year 1939 nor modified in any way, was in full force and effect at the time of plaintiff’s reenlistment. Plaintiff’s legal .right to the reenlistment allowance therefore accrued to him upon the date of his reeiilistment. His failure to receive the allowance has arisen solely from the proviso which limits the availability of funds appropriated for that fiscal year from which the allowance could have been paid. While this restriction clearly constitutes a prohibition on the administrative officers of the Government to use any of the funds so appropriated, such limitation does not affect his basic *525 right to the allowance which' is founded upon permanent legislation.
In Geddes v. United States, 38 C. Cls. 428, the question, arose as to the effect to be given to a limitation on an appropriation carried in the act of March 3, 1885, 23 Stat. 353, 356, which provided:
That no part of the money herein or hereafter appropriated for the Department of Agriculture shall be-paid to any person, as additional salary or compensation, receiving at the same time other compensation as an officer or employee of the Government.
The court, holding that plaintiff was entitled to recover, notwithstanding this limitation, said:
The statutory provision is a proviso to an appropriation, and its plain purpose is that no person in the Department of Agriculture, or out'of the Department of Agriculture, who is receiving “compensation as an officer or employee of the Government”-shall be paid additional compensation for additional service out ox general funds appropriated for the Department of Agriculture. Applying to no designated class of persons, it is a provision of law controlling appropriations for the Department by limiting the discretionary authority of the Secretary. The evil against' which it is directed is the practice of allowing additional compensation for additional service in that Department.
That limitation upon the power of the Secretary does not constitute a defense. An appropriation is the setting aside by Congress of a designated amount of public money for a designated purpose.
“No money shall be drawn from the Treasury but in consequence of appropriations made by law.” (Const. Art. 1, sec. 9.)
The accounting officers are the guardians of the appropriations. It is their business to see that no money is paid out of the Treasury unless the payment is authorized by an appropriation act. It is not their business to adjudicate abstract questions of legal right beyond the legal right of a person to be paid out of a specific appropriation. An appropriation constitutes the means for discharging .the legal debts of the Government.
The judgment of a court has nothing to do with the means — with the remedy for satisfying a judgment. It is the business of courts to render judgments, leaving to
*526 Congress and the executive officers the duty of satisfying them. Neither is a public officer’s right to his legal salary dependent upon an appropriation to. pay it. Whether it is to be paid out of one appropriation or out of another; whether Congress appropriate an insufficient amount, or a sufficient amount, or nothing, at all, are questions which are vital for the accounting officers, but which do not enter into the consideration of a case in the courts. This has been repeatedly held by the Supreme Court and this court, beginning with Graham’s Gase, in the first volume of the Reports (1C. Cls. R. 380). The appropriations made for all the Executive Departments, except that of the Department of Agriculture, are specific — so much for this object, so much for that. But it has been the legislative practice for some years to appropriate gross amounts for the Department of Agriculture, and at the same time to append the above limitation upon the power of the Secretary. The judgment of this court will not be paid out of that appropriation; the limitation upon the power of the Secretary does not extend to the court; the real question before the court is that of the claimant’s legal right to receive the pay of both offices, irrespective of the statutes above quoted.
In Erwin v. United States, 37 Fed. 470 (S. D. Ga. 1889), a clerk of the court brought suit for his per diem allowance under Sec. 828, Revised Statutes, which provided that he should receive $5.00 a day for his attendance on the court while actually in session. The appropriation act of August 4, 1886, 24 Stat. 253, contained the following provision:
Nor shall any part of the money appropriated by this act be used in the payment of a per diem compensation to any clerk or marshal for attendance in court except for days when business is actually transacted in court, and when they attend under sections 583, 584, 671, 672, and 2013 of the Revised Statutes.
The Court, holding that the limitation contained in the appropriation act was a limitation upon the appropriation only, and not a suspension, repeal or modification of the basic law, said (p. 478) :
Under the provisions of the fee-bill (section 828, Rev. St.,) the clerk was entitled to a per diem for his attendance on the court when actually in session even *527 though “no suitors appeared, or for other reason the court, in its discretion, adjourned to a future day.” Jones v. U. S., 21 Ct. Cl. 1: Bill v. U. S. (Ct. Cl. No. 15570). (23 Ct. Cl. 142.) Goodrich y. U. S., 35 Fed. Rep. 193. The limitation in the act of August 4,1886, was expressly confined to the money appropriated by that act, and did not therefore repeal the general statute giving the clerk the right to his per diem for his attendance for each day when the court is actually in session.
This provision in the appropriation act of August 4, 1886, was also construed by the Circuit Court of Appeals (First Circuit), United States v. Aldrich, 58 Fed. 688, 689, where the ruling in Erwin v. United States, supra, was reannounced.
It is well established that recovery may be had where Congress has failed to appropriate all the amount provided as compensation for an officer under the basic law, and also where there was a failure to appropriate any money for pay provided for in earlier permanent legislation. United States v. Langston, 118 U. S. 389; Bell v. United States, 35 Fed. 889; United States v. Vulte, 233 U. S. 509; Archbald v. United States, 218 Fed. 270; Graham v. United States, 1 C. Cls. 380; Collins v. United States, 15 C. Cls. 22; Strong v. United States, 60 C. Cls. 627; Elmer E. Miller, 86 C. Cls. 609, 613. While these cases are not directly in point on the question presented in this case the principle is the same.
Plaintiff is entitled to recover. The contention that the provision of the basic pay act of June 10, 1922, was suspended for the fiscal year 1939, insofar as it related to the pay of the reehlistment allowance, cannot be sustained. That Act had not been repealed or modified in any respect and was in full force and effect during the fiscal year. The restriction placed by Congress upon the use of appropriations made for the fiscal year for payment of such reenlistment allowances has been uniformly construed to affect only sums appropriated and otherwise available. Such limitation was binding on the administrative officers of the Government but in no way suspended or repealed the basic right of reenlisted men to the allowance.
*528 It is ordered that judgment against the United States in favor of the plaintiff be awarded in the sum of $75.00.
Littleton, Judge; Green, Judge; and Whalet, Chief Justice, concur.
Whitaker, Judge, took no part in the decision of this case.